UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| NORTH COAST TECHNICAL SALES, INC., an Ohio corporation, | Case No. 12-CV-1272 (PJS/LIB) |
| Plaintiff, | ORDER |
| v. | |
| PENTAIR TECHNICAL PRODUCTS, INC., a Rhode Island corporation f/k/a Pentair Electronic Packaging Company, | |
| Defendant. | |

Adam J. Glazer and David S. Makarski, SCHOENBERG, FINKEL, NEWMAN & ROSENBERG, LLC; Christopher M. Daniels and Jesse H. Kibort, DANIELS & WYMORE, PLLC, for plaintiff.

Quentin R. Wittrock and Nicholas H. Callahan, GRAY, PLANT, MOOTY, MOOTY, & BENNETT, P.A., for defendant.

Plaintiff North Coast Technical Sales, Inc. ("North Coast") and defendant Pentair Technical Products, Inc. ("Pentair") were parties to a sales-representative agreement, under which North Coast sold electronic cabinets and other products manufactured by Pentair. In October 2011, Pentair terminated North Coast's authority to sell electronic cabinets, and then in January 2012, Pentair terminated the sales-representative agreement altogether. North Coast responded by filing this lawsuit against Pentair, alleging that both of Pentair's actions were unlawful. Pentair now moves to dismiss North Coast's complaint. For the reasons described below, Pentair's motion is granted in (large) part and denied in (small) part.

## I. FACTS

Pentair manufactures electronic cabinets and other products. In 2009, Pentair and North Coast entered into a sales-representative agreement, pursuant to which North Coast was granted the right to sell Pentair products on commission in Ohio, Kentucky, Michigan, Indiana, and parts of Pennsylvania. The original contract ran through December 31, 2009, but the contract automatically renewed for one-year terms. Either Pentair or North Coast could terminate the contract for any reason and at any time; the terminating party merely had to give 30 days' written notice of the termination to the other party. Pl. Ex. § 8.2. [ECF No. 4] ("Contract").

Under the contract, North Coast was authorized to sell "only those Products(s) checked on Exhibit B." Contract § 1.3. Exhibit B was a list of four categories of products that Pentair manufactured — "Birtcher Products," "Calmark Products," "Mechanical Products," and "System Products" — and two of those categories were divided into subcategories. For example, the category of "Mechanical Products" was divided into six subcategories: "Cabinets," "Cases," "Front Panels," "Stamped Accessories," "Sub-racks," and "Engineered Solutions/BTP." Following each category (or subcategory) was a box; if the box was checked, North Coast was authorized to sell products in that category. In Exhibit B to the Pentair-North Coast contract, the box after "All Product Lines" was checked, meaning that North Coast was authorized to sell all of the products in all of the categories. Importantly for purposes of this case, however, Pentair retained the right to "revise[] from time to time" the product list[1] upon 30 days' written notice to North Coast. Contract § 1.3.

---

[1]Although § 1.3 of the contract provides that Pentair may revise "products," both parties acknowledged in their briefs and at the hearing on Pentair's motion that § 1.3 gives Pentair the right to revise the product *list* affixed to the contract as Exhibit B.

On October 1, 2011, Pentair provided North Coast with a "written notice of non-renewal" (the "non-renewal notice"). Mem. in Opp'n Ex. 1 at 3-4 [ECF No. 9-1]. This non-renewal notice informed North Coast that Pentair was withdrawing North Coast's authority to sell electronic cabinets effective January 1, 2012; North Coast's authority to sell the other products described on the product list was not affected. *Id.* Then, on January 13, 2012, Pentair notified North Coast that it was terminating the entire sales-representation agreement, effective February 17, 2012[2] (the "termination notice"). North Coast responded by bringing this action against Pentair.

In its complaint, North Coast alleges that Pentair acted unlawfully both in sending the non-renewal notice in October 2011 and in sending the termination notice in January 2012. Specifically, North Coast alleges that Pentair breached the sales-representative agreement and violated the Minnesota Termination of Sales Representative Act ("the MTSRA"), Minn. Stat. § 325E.37. North Coast also alleges that two equitable doctrines — the procuring-cause doctrine and the doctrine of unjust enrichment — afford it relief from Pentair's actions.

## II. ANALYSIS

### A. The MTSRA

Under the MTSRA, "[a] manufacturer, wholesaler, assembler, or importer may not terminate a sales representative agreement unless the person has good cause" to do so, and unless the person provides the sales representative with "written notice setting forth the reason(s) for the termination at least 90 days in advance of termination . . . ." Minn. Stat. § 325E.37, subd. 2.

---

[2]The termination notice was sent on January 13, 2012, and purported to take effect on February 13, 2012. But North Coast did not receive the notice until January 17, 2012. Both parties acknowledge that, because the 30-day termination period runs from *receipt* of notice of termination, the effective date of the termination was February 17, not February 13.

North Coast argues that neither Pentair's non-renewal notice nor its termination notice complied with the MTSRA. The October non-renewal notice gave 90 days' notice of the termination of North Coast's authority to sell electronic cabinets, but the notice did not purport to be for "good cause," and the notice failed to "set[] forth the reasons(s) for the termination." *Id.* The January termination notice also did not purport to be for "good cause" and also failed to "set[] forth the reasons(s) for the termination"; moreover, unlike the non-renewal notice, the termination notice did not give North Coast at least 90 days' notice of the termination.

North Coast may be correct that, if it were protected by the MTSRA, it could obtain relief under the statute. The problem for North Coast is that it is not protected by the MTSRA. By its terms, the MTSRA protects only sales representatives "who, during some part of the period of the sales representative agreement, (1) [are] resident[s] of Minnesota or maintain[] [their] principal place of business in Minnesota; or (2) whose geographical territory specified in the sales representative agreement includes part or all of Minnesota." Minn. Stat. § 325E.37, subd. 6. North Coast does not reside in Minnesota or maintain its principal place of business in Minnesota, and the sales-representative agreement between Pentair and North Coast does not define any part of Minnesota as being within North Coast's territory. On its face, then, the MTSRA does not protect North Coast.

North Coast points out, however, that its sales-representative agreement with Pentair includes a choice-of-law clause that provides that the contract "will be deemed to have been made in and will be construed in accordance with and governed by the laws of the State of Minnesota." Contract § 10.7. By specifying that Minnesota law would "govern" their contract,

North Coast argues, the parties agreed that North Coast would enjoy the substantive protections of the MTSRA.

This view, however, reads too much into a generic choice-of-law clause. The choice-of-law clause in the Pentair-North Coast contract dictates that this Court must apply the laws of the State of Minnesota — that is, that this Court must apply the statutes enacted by the Minnesota Legislature and the opinions issued by the Minnesota Supreme Court *as they are written*. But the choice-of-law clause does not *change* those statutes and judicial decisions. If, for example, the MTSRA provided that it protected only sales representatives who sold automobiles or who employed fewer than 15 people — and if North Coast did not sell automobiles or did not employ fewer than 15 people — then North Coast would not be protected under the MTSRA, even though its contract with Pentair includes a Minnesota choice-of-law clause. Again, the choice-of-law clause *applies* Minnesota law; it does not *change* Minnesota law.

The MTSRA protects only sales representatives who reside in Minnesota, who maintain a principal place of business in Minnesota, or whose sales territory includes at least part of Minnesota. North Coast is not such a sales representative, and therefore it is not protected by the MTSRA. Had Pentair and North Coast wanted to do so, they could have specified in their sales-representative agreement that North Coast would enjoy the substantive protections of the MTSRA, even though the MTSRA, by its terms, does not apply to North Coast. But the parties said nothing about the MTSRA.

North Coast complains that interpreting the choice-of-law clause in this manner is unfair. North Coast points out that a number of states — including Pennsylvania, which is included in its sales territory — have enacted statutes that provide various types of protections to sales

representatives. *See* 43 P.A. Cons. Stat. § 1471 et seq.³ But North Coast is not protected by any of these statutes because the choice-of-law clause in its contract with Pentair says that the contract is governed by Minnesota law. Thus, for Pentair, it's "heads I win, tails you lose": North Coast is not protected by the MTSRA, because, by its terms, the statute does not apply to North Coast. But North Coast is also not protected by the law of any other state, because of the choice-of-law clause in its contract with Pentair.

It is, of course, not the job of this Court to decide whether the contract between Pentair and North Coast is "fair." The parties had the freedom to contract, they exercised that freedom in negotiating the sales-representative agreement, and the responsibility of this Court is to enforce the bargain struck by the parties. Moreover, the situation is not nearly as unfair as North Coast suggests. The Pennsylvania sales-representative act whose non-applicability North Coast laments is considerably narrower than the MTSRA. (Indeed, the sales-representative laws of *most* states are considerably narrower than the MTSRA.) The Pennsylvania act provides only for the prompt payment of commissions due to a sales representative after termination. Unlike the MTSRA, the Pennsylvania act does not prohibit termination of sales representatives without cause, nor does it require 90 days' notice before termination, nor does it require that the notice of termination include an explanation of the reasons for the termination. *See* 43 P.A. Cons. Stat. §§ 1471-1478. In other words, even if the Pennsylvania act applied to the Pentair-North Coast

---

³North Coast's complaint pleads a claim under the Pennsylvania Commissioned Sales Representative Law, 43 P.A. Cons. Stat. § 1471 et seq., in the alternative to its claim under the MTSRA. But because Pentair and North Coast agreed that their contract would be governed by the laws of Minnesota — and not the laws of Pennsylvania — the Pennsylvania act does not apply.

contract, it would have virtually no effect on the current dispute between Pentair and North Coast.

Moreover, Minnesota courts have held that sales representatives who *are* covered by the MTSRA can opt out of its protections — by, for example, agreeing that a sales-representative agreement is governed by the laws of a state that does not have a sales-representative statute (or that, like Pennsylvania, has only a weak statute). *See Hagstrom v. American Circuit Breaker Corp.*, 518 N.W.2d 46, 48-49 (Minn. Ct. App. 1994) (finding that choice of North Carolina law amounted to waiver of MTSRA protection by salesperson); *cf. Warren E. Johnson Companies v. Unified Brand, Inc.*, 735 F. Supp. 2d 1099, 1104-08 (D. Minn. 2010) (upholding choice of Mississippi law and finding that the MTSRA did not apply to the contract at issue). Thus, although the practical effect of the choice-of-law clause in the Pentair-North Coast contract is to leave North Coast unprotected by any state's sales-representative act, there is nothing startling about that fact. Thousands of sales representatives work in states that do not have sales-representative acts, and, even in states that do have such acts, it is both common and lawful for sales representatives to agree to waive the protections of those acts.

For these reasons, North Coast's claim under the MTSRA is dismissed.[4]

---

[4] North Coast also brings a claim pursuant to Minn. Stat § 181.145, which requires "prompt payment" of commissions that are due to a salesperson who has been terminated and who was employed "in this state." Because North Coast was not employed "in this state," it cannot recover under § 181.145. North Coast was not located in Minnesota, its sales territory did not include Minnesota, and it sold nothing in Minnesota.

### B. Breach of Contract

#### 1. Non-Renewal Notice

North Coast also alleges that Pentair breached the sales-representative agreement. According to North Coast, the agreement gave both parties the right to *terminate* the contract upon 30 days' written notice, but it did not give the parties the right to "non-renew" only certain aspects of the agreement. North Coast acknowledged at the hearing on Pentair's motion that the January 2012 termination notice was consistent with the terms of the contract. North Coast argues, however, that the October 2011 non-renewal notice — which purported to revoke North Coast's authority to sell electronic cabinets — breached the contract. This dispute, then, is over a very narrow issue: Did Pentair breach the contract by depriving North Coast of authority to sell electronic cabinets during the six-week period between January 1, 2012 (when the non-renewal took effect) and February 17, 2012 (when the termination took effect)?

Pentair argues that, when it issued the October non-renewal notice, it was not exercising its authority to terminate the contract, but instead was exercising its authority to revise the list of products that North Coast was authorized to sell. As explained above, the contract gave North Coast authority to sell "only those Products(s) checked on Exhibit B." Contract § 1.3. Exhibit B was a check-a-box list of products that Pentair manufactured. Under § 1.3 of the contract, Pentair retained the right to "revise[] from time to time" this product list upon 30 days' notice to North Coast. *Id*. Pentair points out that the October 2011 non-renewal notice — which took effect in January 2012 — gave North Coast far more than 30 days' notice of the termination of its authority to sell electronic cabinets.

North Coast disputes that § 1.3 gave Pentair the right to terminate North Coast's authority to sell electronic cabinets. North Coast acknowledges that § 1.3 gives Pentair the right to "revise" the list of products that North Coast is authorized to sell. But, says North Coast, the word "revise" is ambiguous. It could mean "add products to and remove products from the list." But it could also mean "make only technical or 'non-substantive' changes to the list" — such as changes to particular model numbers or changes necessary to correct typographical mistakes.

The Court disagrees. "Revise" is a commonly used word with a commonly understood meaning: "[t]o reconsider and change or modify." American Heritage Dictionary 1492 (4th ed. 2000). A contractual provision that gives a manufacture the right to "revise" a list of products that a sales representative is authorized to sell plainly gives the manufacturer the right to add products to and remove products from that list. Nothing in the way that people use the word "revise" — and nothing in the Pentair-North Coast contract — supports the unusual definition ascribed to it by North Coast.

Indeed, the Pentair-North Coast contract *belies* North Coast's argument. Exhibit B is not a long list of products with model numbers and other specifications. Rather, the product list is less than a page long, and it consists of four general categories, one of which is broken into six subcategories, and another of which is broken into three subcategories. There is not any "technical" information to correct. Moreover, there are no lines or spaces or other places for the parties to write in modifications; instead, there is simply a list of categories, each of which is followed by a box that can be checked or not checked. The only kind of "revision" that Pentair is likely to make to Exhibit B is to check a box that had not been checked, or uncheck a box that

had been checked, or substitute a new list of categories. The highly and artificially restricted authority to revise posited by North Coast would be useless to Pentair.

Moreover, on the particular product list attached to the Pentair-North Coast contract, Pentair has checked the box following "All Product Lines." In bargaining for the right to "revise" this list, Pentair could only have been bargaining for the right to *remove* North Coast's authority to sell certain products. Pentair did not need authority to add to North Coast's authority, as North Coast already had authority to sell everything that Pentair made. And Pentair did not need authority to make "technical" changes, because, as noted, the list did not include any technical information.

North Coast once again argues that enforcing the plain terms of the contract would be unfair to it. Once again, however, the fairness of the deal is irrelevant. It is the parties who decide what is "fair," and the Court who enforces the parties' decision. Moreover, North Coast's "fairness" arguments are once again not terribly persuasive.

North Coast argues that if Pentair's authority to "revise" the product list means that Pentair could remove products from it, then Pentair could use that authority to remove *all* products from the list and thereby use its "revision" authority to effectively terminate the contract. In theory, North Coast is correct, but North Coast fails to explain why Pentair would use its "revision" authority in this manner, or how North Coast would be harmed if it did. The contract gives Pentair the right to revise the product list on 30 days' written notice to North Coast. Contract § 1.3. The contract also gives Pentair the right to terminate the contract on 30 days' written notice to North Coast. Contract § 8.2. It is no easier for Pentair to revise the product list than to terminate the contract. In other words, if Pentair wants to terminate the

contract, it has no reason to revise the product list to bring about a de facto termination; it can just as easily terminate the contract. What would be peculiar is the interpretation sought by North Coast — an interpretation that would give Pentair the right to terminate the contract altogether on 30 days' written notice, but not the right to terminate the authority to sell a particular product on 30 days' written notice.

North Coast argues that this would not be a peculiar result because, from its standpoint, the authority to sell *some* products might be worse than the authority to sell *no* products. Suppose, for example, that electronic cabinets are the only products manufactured by Pentair that are worthwhile for North Coast to sell. Suppose that Pentair's other products are far more difficult to sell and earn far less in commissions. In this situation, North Coast would never agree to a contract to sell all products except electronic cabinets. But if Pentair can "revise" North Coast's sales-representative agreement to remove electronic cabinets, Pentair will be able to trap North Coast into exactly that kind of contract.

North Coast's argument overlooks a critical fact: North Coast had the unfettered right to terminate the sales-representative agreement by giving 30 days' written notice to Pentair. Contract § 8.2. If Pentair revised the contract to remove electronic cabinets, and if North Coast did not want to sell the remaining products, North Coast could have terminated the contract. Pentair had no ability to "trap" North Coast into an unprofitable relationship.

Finally, North Coast contends that, when Pentair issued the October non-renewal notice, it did not intend to exercise its authority under § 1.3 of the contract to revise the product list, because the notice did not cite § 1.3 or explicitly refer to the product list. But whether or not North Coast is correct about Pentair's subjective intent, the point remains that Pentair *had* the

contract, it has no reason to revise the product list to bring about a de facto termination; it can just as easily terminate the contract. What would be peculiar is the interpretation sought by North Coast — an interpretation that would give Pentair the right to terminate the contract altogether on 30 days' written notice, but not the right to terminate the authority to sell a particular product on 30 days' written notice.

North Coast argues that this would not be a peculiar result because, from its standpoint, the authority to sell *some* products might be worse than the authority to sell *no* products. Suppose, for example, that electronic cabinets are the only products manufactured by Pentair that are worthwhile for North Coast to sell. Suppose that Pentair's other products are far more difficult to sell and earn far less in commissions. In this situation, North Coast would never agree to a contract to sell all products except electronic cabinets. But if Pentair can "revise" North Coast's sales-representative agreement to remove electronic cabinets, Pentair will be able to trap North Coast into exactly that kind of contract.

North Coast's argument overlooks a critical fact: North Coast had the unfettered right to terminate the sales-representative agreement by giving 30 days' written notice to Pentair. Contract § 8.2. If Pentair revised the contract to remove electronic cabinets, and if North Coast did not want to sell the remaining products, North Coast could have terminated the contract. Pentair had no ability to "trap" North Coast into an unprofitable relationship.

Finally, North Coast contends that, when Pentair issued the October non-renewal notice, it did not intend to exercise its authority under § 1.3 of the contract to revise the product list, because the notice did not cite § 1.3 or explicitly refer to the product list. But whether or not North Coast is correct about Pentair's subjective intent, the point remains that Pentair *had* the

right to terminate North Coast's authority to sell electronic cabinets on 30 days' written notice, and Pentair gave North Coast (more than) 30 days' written notice that it was terminating North Coast's authority to sell electronic cabinets. Pentair did not breach the contract.

### C. Equitable Relief

North Coast argues that even if it cannot sue under the MTSRA, and even if Pentair did not breach the contract, North Coast is nevertheless entitled to relief under two equitable doctrines: the procuring-cause doctrine and doctrine of unjust enrichment. The Court will consider each doctrine in turn.

#### 1. The Procuring-Cause Doctrine

North Coast alleges that it has not been paid all of the commissions due to it under the contract. Specifically, North Coast alleges that it "procured orders for sales of Pentair products to Westinghouse and Bombardier, which orders have continued to be received and accepted by Pentair after North Coast's termination . . . ." Compl. ¶ 61. Under the procuring-cause doctrine, a terminated salesperson has the right to be paid a commission on a sale when that salesperson was the "procuring cause" of that sale, even if the commission was not earned prior to the date of the salesperson's termination. *See Rosenberg v. Heritage Renovations, LLC*, 685 N.W.2d 320, 327 (Minn. 2004) (discussing procuring cause in the context real-estate-broker agreements).

The problem for North Coast, however, is that the procuring-cause doctrine applies only when no contract addresses the right of the salesperson to commissions after termination. "[P]arties may contract for lesser performance. The terms of the contract govern." *Raddatz v. Northland Development Co. of Minneapolis, Inc.*, 352 N.W.2d 474, 478 (Minn. Ct. App. 1984) (internal citations omitted). The sales-representative agreement between Pentair and North Coast

specifically addresses North Coast's right to commissions following termination. Section 8.2 of the contract provides that, "[i]n the case of termination at the discretion of [Pentair], commissions will be paid to [North Coast] on customer invoices for orders placed on or before [the] effective termination date, for a period of ninety (90) calendar days." And § 8.7 of the contract provides that "[n]either party shall be entitled to any compensation or reimbursement for . . . loss of prospective profits, anticipated sales or anticipated commissions . . . or other losses occasioned by termination or expiration" of the contract.

The procuring-cause doctrine is designed to fill gaps — gaps that exist because a salesperson was working without a contract, or because the contract under which a salesperson was working did not address his or her entitlement to commissions after termination. In this case, there is no gap to fill. Accordingly, North Coast cannot recover under the procuring-cause doctrine.

### 2. Unjust Enrichment

North Coast also argues that the Court should afford it relief under the doctrine of unjust enrichment, which "allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). Much like the procuring-cause doctrine, however, the doctrine of unjust enrichment fills gaps. Relief under the doctrine "'cannot be granted where the rights of the parties are governed by a valid contract.'" *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 880 (8th Cir. 2010) (quoting *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981)).

Here, the rights of Pentair and North Coast are indisputably governed by a valid contract. Nowhere in its complaint does North Coast plead — even in the alternative — that its sales-representative agreement was invalid. That contract explicitly addressed North Coast's entitlement to commissions, both before and after termination. Moreover, "[t]hat the contract was properly terminated . . . does not make it any less dispositive with regard to the rights and duties of the parties." *M.M. Silta*, 616 F.3d at 881. North Coast is not entitled to recover under the doctrine of unjust enrichment.

*D. Surviving Claims*

For the reasons described above, the Court dismisses most of the claims pleaded in North Coast's complaint. Two of those claims survive, however:

1. Interference with Performance of Contract

The parties agree that North Coast had the right to sell electronic cabinets (1) after October 1, 2011, when Pentair gave notice that it was terminating North Coast's authority to sell electronic cabinets, and (2) before January 1, 2012, the effective date of that termination. North Coast alleges that, during this period of time, Pentair wrongfully interfered with North Coast's ability to sell electronic cabinets. Pentair has moved to dismiss this claim, arguing that it was not sufficiently pleaded in North Coast's complaint. But Pentair is wrong. Not only did North Coast plead this claim, but North Coast even described a specific instance of interference by Pentair. *See* Compl. ¶ 54(c). Taking North Coast's allegations as true — as the Court must when ruling on a Rule 12(b)(6) motion — North Coast has pleaded a viable claim against Pentair.

## 2. Invoices

Under the contract, "[i]n the case of termination at the discretion of [Pentair], commissions will be paid to [North Coast] on customer invoices for orders placed on or before [the] effective termination date, for a period of ninety (90) calendar days." Contract § 8.2. The contract also entitles North Coast to "a summary of all of the invoices sent during the previous fiscal month, which evidence [North Coast's] rights to receive commissions under this Agreement . . . ." Contract § 5.3. North Coast alleges that it has not received a summary of invoices for the period beginning October 2011 through mid-May 2012 (90 days after the February 17, 2012 date of termination). North Coast is clearly entitled to such a summary, and, if Pentair has not provided it (as North Coast alleges), North Coast is entitled to relief in the form of an accounting. Once again, North Coast has pleaded a viable claim.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the motion to dismiss of defendant Pentair Technical Products, Inc. [ECF No. 5] is GRANTED IN PART and DENIED IN PART:

1. Pentair's motion to dismiss is GRANTED as to Counts I and II of plaintiff North Coast Technical Sales, Inc.'s complaint. Counts I and II are DISMISSED WITH PREJUDICE AND ON THE MERITS.

2. Defendant's motion to dismiss Count III of plaintiff's complaint is GRANTED IN PART and DENIED IN PART.

    a.    Defendant's motion is DENIED as to the claim that Pentair interfered with North Coast's ability to sell electronic cabinets during October, November, and December 2011.

    b.    Defendant's motion is DENIED as to North Coast's allegation that it has not yet received the summaries of invoices to which it was entitled under the contract.

    c.    Defendant's motion is GRANTED in all other respects, and all claims encompassed by Count III — with the exception of the claims described in paragraphs 2(a) and 2(b) above — are DISMISSED WITH PREJUDICE AND ON THE MERITS.

3.    Defendant's motion to dismiss Counts IV through VII of plaintiff's complaint is GRANTED. Counts IV through VII are DISMISSED WITH PREJUDICE AND ON THE MERITS.


Dated: March 4, 2013                              s/Patrick J. Schiltz
                                                          Patrick J. Schiltz
                                                          United States District Judge